UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ISO GROUP, INC.,

        Plaintiff,

vs.

Aenas, LLC a/k/a Aeneas, LLC, TAT
Consulting International, LLC a/k/a TAT
Consulting, Inc, and Ludovic Sautreuil, Tom
Techoueyres, Alex Techoueyres, as
individuals,

        Defendants.

Case No.: 6:18-cv-02173-PGB-KRS

_____

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ACCOMPANYING MEMORANDUM OF LAW

Plaintiff ISO Group, Inc. ("ISO Group" or "Plaintiff"), by and through its undersigned counsel, and pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Rule" or "Rules") and Local Rule 4.06, moves for entry of a preliminary injunction against the Defendants, Aenas, LLC a/k/a Aeneas, LLC ("Aenas"), TAT Consulting International, LLC a/k/a TAT Consulting, Inc. ("TAT Consulting"), Ludovic Sautreuil ("Sautreuil"), Tom Techoueyres ("T. Techoueyres"), and Alex Techoueyres ("A. Techoueyres") (Sautreuil, T. Techoueyres, and A. Techoueyres are hereinafter referred to as the "Individual Defendants," and collectively, with Aenas and TAT Consulting referred to as the "Defendants").

# TABLE OF CONTENTS

1.  Introduction ................................................................................................... 1

2.  Statement of Facts .......................................................................................... 2

     a.  ISO Group's Development and Protection of Trade Secrets and Other Confidential Information ................................................................. 2

     b.  Individual Defendants' Employment with ISO Group ...................................... 3

     c.  The Non-Compete, Non-Disclosure, Non-Solicit Agreements ........................ 5

     d.  Defendants' Conduct ...................................................................................... 7

3.  Legal Standard ................................................................................................ 8

4.  Argument ........................................................................................................ 9

     a.  Plaintiff Has a Substantial Likelihood of Success on All Claims.................... 9

         i.   *Federal and State Trade Secrets Claims (Counts I & II)* .................... 9

         ii.  *Breach of Employment Covenants (Counts III & IV)* ........................ 11

         iii. *Tortious Inference with Business Relationships (Count V)* ............... 14

         iv.  *Breach of Fiduciary Duty (Count VI)* ................................................. 15

     b.  Plaintiff will Suffer Irreparable Harm Without an Injunction ........................ 16

     c.  The Irreparable Harm to Plaintiff Outweighs any Potential Harm to the Defendants or Other Parties if an Injunction is Granted................................ 17

     d.  An Injunction Serves the Public Interest ....................................................... 18

5.  Entry of Bond ................................................................................................. 18

6.  Conclusion ..................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Advice Interactive Grp., LLC v. Web.com Grp., Inc.*,
Case No. 3:17-cv-801-J-39MCR, 2017 WL 6554409 (M.D. Fla. Oct. 20, 2017) ...............................................................................................................8

*Am. Residential Servs., Inc. v. Event Tech. Servs., Inc.*,
715 So. 2d 1048 (Fla. 3d DCA 1998) ...............................................................3

*Autonation, Inc. v. O'Brien*,
347 F.Supp.2d 1299 (S.D. Fla. 2004) ..............................................................17

*Beatriz Pino and Viva America Media Grp. v. Spanish Broad. Sys. Of Fla., Inc.*, 564 So. 2d 186 (Fla. 3d DCA 1990) .......................................................18

*Brand Ventures, Inc. v. TAC5, LLC*,
No. 6:17-CV-1983-ORL-40KRS, 2018 WL 691774 (M.D. Fla. Feb. 2, 2018) .............................................................................................................8, 9

*Capraro v. Lanier Bus. Prods., Inc.*,
445 So. 2d 719 (Fla. 4th DCA 1984) ...............................................................17

*Dig. Assurance Certification, LLC v. Pendolino*,
No. 6:17-CV-72-ORL-31TBS, 2017 WL 320830 (M.D. Fla. Jan. 23, 2017)....................10

*E. Colonial Refuse Serv., Inc. v. Velocci*,
416 So. 2d 1276 (Fla. 5th DCA 1982) ..............................................................10

*JetSmarter Inc. v. Benson*,
No. 17-62541-CIV, 2018 WL 2694598 (S.D. Fla. Apr. 6, 2018).................10, 15

*Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*,
939 So. 2d 268 (Fla. 4th DCA 2006) ...............................................................13

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lovekamp*,
No. 4:01CV318SPM, 2001 WL 810749 (N.D. Fla. July 16, 2001)....................10

*Milner Voice and Data, Inc. v. Tassy*,
377 F. Supp. 2d 1209 (S.D. Fla. 2005) ............................................................13

*Morgan Stanley Smith Barney, LLC v. Abel*,
    No. 3:18-CV-00141-J-34MCR, 2018 WL 515348 (M.D. Fla. Jan. 23,
    2018) ................................................................................................................14, 16

*N. Am. Prod. Corp. v. Moore*,
    196 F. Supp. 2d 1217 (M.D. Fla. 2002) ..........................................................12

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville,
    Fla.*,
    896 F.2d 1283 (11th Cir. 1990) ......................................................................18

*Osborne Assocs., Inc. v. Cangemi*,
    No. 3:17-CV-1135-J-34MCR, 2017 WL 5443146 (M.D. Fla. Nov. 14,
    2017) ..................................................................................................................9

*Sethscot Collection, Inc. v. Drbul*,
    669 So. 2d 1076 (Fla. 3d DCA 1996) ..............................................................10

*Silvers v. Dis-Com Sec., Inc.*,
    403 So. 2d 1133 (Fla. 4th DCA 1981) (overruled on other grounds)..............18

*Supinski v. Omni Healthcare, P.A.*,
    853 So. 2d 526 (Fla. 5th DCA 2003) ..............................................................13

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*,
    320 F. Supp. 3d 1285 (M.D. Fla. 2018) ..........................................................10

## Statutes

18 U.S.C.A. § 1836, et seq.............................................................................10, 11

Fla. Stat. Ann. § 688, et seq. ........................................................................10, 11

Fla. Stat. § 542.335 .................................................................................. *passim*

## MEMORANDUM OF LAW

1.   **Introduction**

Plaintiff ISO Group, Inc. ("ISO Group" or "Plaintiff")[1] brings this action to enjoin the disclosure and use of its trade secrets and other confidential and proprietary information, interference with its substantial relationships with specific prospective and existing clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers, and prevent continuing harm to its goodwill in the defense and aerospace industry.  The threatened and imminent irreparable harm outlined herein is the result of actions taken by ISO Group's former officers, the Individual Defendants (A. Techoueyres, T. Techoueyres, and Sautreuil) and their establishment of ISO Group's direct competitors, Aenas and TAT Consulting, in violation of their contractual covenants, as well as common law.

Injunctive relief is clearly warranted in this case.  All elements for the requested relief are present as described below in that: (i) ISO Group is likely to succeed on the merits of its claim; (ii) ISO Group faces imminent and irreparable harm in absence of the requested injunctive relief; (iii) issuance of the requested preliminary injunction would not harm the Defendants or others; and (iv) the requested preliminary injunction is in the public interest. *See* Local Rule 4.05(b)(4), 4.06(a)(1).

In this motion, ISO Group seeks to enjoin Defendants from (a) using or disclosing any of ISO Group's trade secrets and other information that is not readily known or available to the public regarding its confidential business, relationships with current or prospective clients,

---

[1] ISO Group incorporates by reference all background facts and defined terms from its Verified Complaint (hereinafter, the "Complaint" or "Compl.").

agents, resellers, sales channels, subcontractors, contractors, and suppliers, employees, pricing, financials, operations, marketing, technology or contracts; (b) independently or cooperatively soliciting, inducing, or encouraging any current employee(s) of ISO Group to terminate their employment with ISO Group or to accept employment with Defendants; (c) contacting, soliciting, or accepting business from any actual or prospective clients of ISO Group; (d) tortiously interfering with ISO Group's contractual and business relations; and (e) violating restrictive covenants with ISO Group.

2.     **Statement of Facts**

ISO Group is a supply chain partner for the defense and aerospace industry doing business with every service branch of the U.S. Department of Defense, other U.S. Government Departments and Agencies, numerous Fortune 500 aerospace and defense companies, many mid- and small-tier aerospace and defense companies, several foreign defense ministries and other foreign government departments and agencies, and various other foreign and domestic resellers. Compl. ¶ 9. Annually, ISO Group conducts business with over one thousand clients located throughout the world. Compl. ¶ 10. As a supply chain partner, ISO Group consults with its clients and then plans and implements supply chains to support the maintenance, repair, operation, and assembly of the clients' desired systems. Compl. ¶ 11.

a.     **ISO Group's Development and Protection of Trade Secrets and Other Confidential Information**

At the center of ISO Group's operations is its Defense Logistics Management System (DLMS$^{TM}$), a proprietary database of over 125 million part numbers correlated to 12,000 suppliers and covering 2,000 weapons systems and platforms. Compl. ¶ 13. Over the course of more than 15 years, ISO Group has invested substantial monetary and labor resources to

create this database. Compl. ¶ 14. In addition to DLMS<sup>TM</sup>, ISO Group has developed valuable, proprietary databases documenting important, non-public information of, among others, its clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers. Compl. ¶ 15. This information is stored in a customer-relationship management database ("CRM Database"). Compl. ¶ 16. ISO Group employees are given individual credentials to access DLMS<sup>TM</sup> and the CRM database which is monitored daily by ISO Group. Compl. ¶ 17. Further, depending on job responsibilities and seniority, employees are unable to access certain confidential information to ensure its security. *Id.*

In addition to these databases, ISO Group spends significant resources on maintaining its position on the prequalified lists of clients to be eligible to receive requests for proposal (RFPs) for current and prospective clients in its industry. Compl. ¶ 20. ISO Group maintains a password-protected database of all RFPs with access granted only to employees involved in preparing the proposal. Further, information required for these proposals is considered confidential as per ISO Group's agreements and policy. Compl. ¶ 21.

ISO Group's DLMS<sup>TM</sup>, CRM Database, RFP Database, and lists of entities and individuals important to its business including, but not limited to, clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers are defined as trade secrets and confidential information, which it exclusively owns and protects. Compl. ¶ 22.

### b.  Individual Defendants' Employment with ISO Group

Brothers, A. Techoueyres and T. Techoueyres (together, the "Techoueyres brothers" and with Ludovic Sautreuil ("Sautreuil"), the "Individual Defendants") founded ISO Group in 2003 along with three other individuals. Compl. ¶ 26. Before leaving ISO Group, A.

Techoueyres held the position of Vice President of Global Sales and T. Techoueyres held the position of Vice President of Strategic Partnerships. *Id.* In their roles, the Techoueyres brothers were responsible for driving ISO Group's domestic and international sales and maintaining relationships with suppliers, agents, clients, and resellers. Compl. ¶ 28. These positions permitted them to have access to ISO Group information, including, but not limited to the confidential databases, financials, and employee files described herein. *Id.* Ludovic Sautreuil, a childhood friend of the Techoueyres brothers, was employed by ISO Group starting in 2007. Compl. ¶ 29. Before his departure in late March 2018, Sautreuil held the position of Vice President of Finance. *Id.* In this role, Sautreuil was responsible for maintaining accounting and banking relationships, managing accounts payable and receivable, and generating purchase orders. *Id.* Like the Techoueyres brothers, he had access to ISO Group's trade secrets and confidential information, including, but not limited to the confidential databases, financials, and employee files. *Id.* Before ISO Group's founding, the Individual Defendants had no experience or preexisting relationships within the defense and aerospace industry. Compl. ¶ 30.

Since 2008, ISO Group has initiated two changes in Chief Executive Officer due to financial and operational issues with the most recent change in 2015. Compl. ¶ 31. In 2017, ISO Group initiated a recapitalization effort to raise funds to continue its operation. Compl. ¶ 34. This change would have altered the Individual Defendants equity position with the company and all three rejected the plan. *Id.* The Techoueyres brothers then terminated their employment relationship with ISO Group, but purportedly continued to act as outside agents for ISO Group. Compl. ¶¶ 38, 39. ISO Group has never received a benefit from this alleged

4

relationship.  *Id.*  Sautreuil announced his intention to leave in Fall 2017 and officially resigned on March 28, 2018.  Compl. ¶¶ 36, 40.

c.      **The Non-Compete, Non-Disclosure, Non-Solicit Agreements**

Pursuant to their employment with ISO Group, on or about September 10, 2008, the Individual Defendants each executed the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement.[2]  Section 1 of the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement provides that:

> NON-DISCLOSURE: "During the term of employment or thereafter, I will not disclose to anyone outside the Company or use for myself or for any entity other than the Company, any information of a confidential nature relating to the technical, commercial or any other affairs of the Company, or any confidential information which the Company has received from a third party.
>
> I understand that confidential information includes items whether or not patentable and whether or not copyrightable owned, possessed, or used by the Company including without limitation any invention, formula, vendor information, customer information, apparatus, equipment, trade secret, research, report, technical data, know-how, computer program, software, software documentation, hardware design, technology, or business plan which is communicated to, learned of, developed or otherwise acquired by me in the course of my employment with the Company which is not generally known to the public. The provisions of this section shall survive the termination of employment and this Agreement.
>
> Upon termination of my employment with the Company or at the time upon request by the Company I will promptly deliver to the Company all records, files, memoranda, notes, designs, data, reports, price lists, customer lists, drawings, plans, computer programs, software, software documentation, sketches, laboratory and research notebooks and other documents (and all

---

[2] Upon a reasonable search of ISO Group's records, the ISO Group Non-Compete, Non-Disclosure, Non-Solicit Agreement for Sautreuil could not be located.  However, Sautreuil had access to employment records in his position as Vice President of Finance and, upon information and belief, Sautreuil took these documents before vacating his position.  Compl. ¶¶ 41, Ex. 8.

copies or reproductions of such materials) relating to the Business of the Company.

I represent that my employment with the Company and my performance under the Agreement do not and will not breach any agreement which obligates me to keep in confidence any trade secrets or confidential or proprietary information of mine or any other party or to refrain from competing, directly or indirectly, with the business of any other party, and I shall not disclose to the Company any trade secrets or confidential or proprietary information of mine or any other party.

I agree to submit to the Company any proposed publication which contains any discussion relating to the Company or any work performed by me during the course of my employment with the Company related to the Business of the Company, and I will not proceed with such publication without the prior written consent of the Company."

Section 2 of the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement provides that:

NON-COMPETE: "I agree, while employed by ISO Group I will devote my full time and attention to the business of the company and will not engage in other business activities during regular business hours.

I also agree that for a period of one year from the date of my separation from the Company that I shall not engage in or become interested, directly or indirectly as a director, officer, employee, 10% or more stockholder, partner in, or consultant to any business that competes with the ISO Group or any company affiliated with the ISO Group. I further agree that during that period of time I will not act as an advisor either as an employee, partner or consultant, to any firm, person or Corporation as to the purchase, lease, or development of voice processing or recording equipment."

Section 3 of the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement provides that:

NON-SOLICIT: "I agree that during the course of employment, and, for a period of one year thereafter, I shall not solicit, entice or encourage any Company employee or independent contractor to terminate his or her relationship with the Company and will not approach any such employee or independent contractor for such purposes or authorize or knowingly approve

the taking of such actions by any other person. The provisions of this paragraph shall survive the termination of employment and this Agreement."

Section 4 of the Non-Disclosure, Non-Competition, and Non-Solicitation Agreement provides that:

> INTELLECTUAL AND COMPANY PROPERTY: "I will, without further consideration, promptly disclose and assign to the Company all rights, title and interest in all intellectual property developed (including, but not limited to patents, trade secrets, trademarks, copyrights, mask works, inventions, improvements, ideas, discoveries, software and other works of authorship) whether alone or with others, during the term of employment, and pertaining directly or indirectly to the Company's business or any potential extension thereof."

Compl. ¶¶ 43-47, Exs. 9, 10.

### d.   **Defendants' Conduct**

In late 2018, ISO Group discovered that the Individual Defendants, individually and through Aenas and TAT Consulting, were working in the defense and aerospace industry for their own benefit and in direct competition with ISO Group.  Compl. ¶ 48.  An inspection of company computers used by the Individual Defendants revealed that the Individual Defendants formed Aenas and TAT Consulting while still employed with ISO Group.  Compl. ¶¶ 49-55. In addition to this information, the inspection revealed that the Individual Defendants through the vehicles of Aenas and TAT Consulting engaged at least three current or prospective ISO Group clients located in Morocco, an ISO Group supplier in Israel, and targeted ISO Group identified prospects in India.  Compl. ¶¶ 60-64.  Upon information and belief, Defendants have continued this conduct after leaving ISO Group, have expanded into multiple ISO Group territories, and are using ISO Group's trade secrets in violation of federal and state trade secrets statues and restrictive employment covenants.  Compl. ¶ 65.  Further, not only did Defendants

use ISO Group resources to form these competing entities, they utilized their high-level positions within ISO Group that gave them access to ISO Group's non-public, confidential information, including vital DLMS$^{TM}$, CRM, and RFP databases to pursue ISO Group's contacts and otherwise compete with ISO Group.  As described above, ISO Group invested substantial monetary and workforce resources in the creation and protection of these databases and other confidential information and the development of business relationships around the world.

ISO Group advances six claims against Defendants: violation of the federal and state trade secrets statutes; breach of restrictive covenants not to compete and disclose and/or use confidential information (only against Individual Defendants); tortious interference with business relationships; and breach of fiduciary duty (only against Individual Defendants). Now, ISO Group seeks a preliminary injunction to enjoin Defendants from their continued misappropriation and use of ISO Group's trade secrets and confidential information, flagrant breach of restrictive covenants, and tortious interference with ISO Group's prospective and existing clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers.

3.      **Legal Standard**

While a preliminary injunction is considered a "drastic and extraordinary remedy", a district court, pursuant to Fed. R. Civ. P. 65 and Local Rules 4.05 and 4.06, is permitted to enjoin a defendant's conduct when a plaintiff demonstrates: (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an

8

injunction would not disserve the public interest. *Brand Ventures, Inc. v. TAC5, LLC*, No. 6:17-CV-1983-ORL-40KRS, 2018 WL 691774, at *2 (M.D. Fla. Feb. 2, 2018); *see also Advice Interactive Grp., LLC v. Web.com Grp., Inc.*, Case No. 3:17-cv-801-J-39MCR, 2017 WL 6554409, at *3 (M.D. Fla. Oct. 20, 2017) (citing *Johnson & Johnson Vision Care. Inc. v. 1-800 Contacts. Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002)).

When considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Brand Ventures, Inc., LLC*, 2018 WL 691774, at *2 (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)) (internal quotation marks omitted).

4. **Argument**

   a. Plaintiff Has a Substantial Likelihood of Success on All Claims

      i. *Federal and State Trade Secrets Claims (Counts I & II)*

ISO Group is substantially likely to prevail on its claims brought under federal and Florida state trade secret protection statutes. To bring claims under both Federal Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secrets Act ("FUTSA"),[3] a plaintiff must allege that it (i) possessed information of independent economic value that was lawfully owned

---

[3] ISO Group, at this stage, is permitted to maintain both claims. *Osborne Assocs., Inc. v. Cangemi*, No. 3:17-CV-1135-J-34MCR, 2017 WL 5443146, at *5 (M.D. Fla. Nov. 14, 2017). ISO Group meets federal jurisdictional requirements under the DTSA as its trade secrets are related to a "product or service used in, or intended for use in, interstate or foreign commerce." Compl. ¶ 5.

by the plaintiff and for which the plaintiff took reasonable measures to keep secret, and (ii) the

defendants used and/or disclosed that information despite, (iii) a duty to maintain its secrecy.

*Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018)

(internal quotation marks and citations omitted).

Under both statutes, the information ISO Group seeks to protect – its DLMS[TM], CRM,

and RFP databases – constitute trade secrets.[4]  Indeed, courts have considered information that

is much less comprehensive, such as a solitary customer list, a trade secret if it is not generally

known to the public and the owner took reasonable measures to protect its confidentiality.  *See,*

*e.g., JetSmarter Inc. v. Benson*, No. 17-62541-CIV, 2018 WL 2694598, at *4 (S.D. Fla. Apr.

6, 2018), report and recommendation adopted, No. 17-62541-CIV, 2018 WL 2688771 (S.D.

Fla. Apr. 16, 2018); *Dig. Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72-ORL-

31TBS, 2017 WL 320830, at *2 (M.D. Fla. Jan. 23, 2017); *Merrill Lynch, Pierce, Fenner &*

*Smith, Inc. v. Lovekamp*, No. 4:01CV318SPM, 2001 WL 810749, at *3 (N.D. Fla. July 16,

2001); *E. Colonial Refuse Serv., Inc. v. Velocci*, 416 So. 2d 1276, 1278 (Fla. 5th DCA 1982);

*Sethscot Collection, Inc. v. Drbul*, 669 So. 2d 1076, 1078 (Fla. 3d DCA 1996).

As detailed above, ISO Group went to considerable economic lengths (1) to build and

continually update all three databases; and (2) protect the information contained within each

---

[4] *See* 18 U.S.C.A. § 1839 ("trade secret means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing…") (internal quotation marks omitted); *see also* "Fla. Stat. Ann. § 688.002 ("Trade secret means information, including a formula, pattern, compilation, program, device, method, technique, or process…") (internal quotation marks omitted).

database.  *See supra* Part II (A).  These databases are the product of more than 15 years of work that required substantial monetary and labor resources in its creation and maintenance. Compl. ¶ 14.  Importantly, ISO Group employees are given individual credentials to access all three databases, and employee use is monitored daily by ISO Group.  Compl. ¶¶ 17, 21. Further, depending on job responsibilities and seniority, employees are unable to access certain confidential information to ensure its security.  Compl. ¶ 17.  Notwithstanding those restrictions, ISO Group also required all employees to sign a non-disclosure agreement. Compl. ¶¶ 23, 25; *supra* Part II (A).

Defendants used ISO Group's trade secrets comprised of detailed information about clients, agents, resellers, sales channels, subcontractors, contractors, suppliers and current opportunities within the defense and aerospace industry, while employed and during the duration of Individual Defendants' Non-Disclosure, Non-Competition, and Non-Solicitation agreements, to directly compete with ISO Group as Aenas and TAT Consulting.  *See supra* Part II (C).  This direct competition has damaged and continues to damage ISO Group.  Given the details above, ISO Group has a substantial likelihood of success on the merits for its trade secrets claims.

<em>ii.</em>     <u><em>Breach of Employment Covenants (Counts III & IV)</em></u>

ISO Group has legally enforceable employment covenants that restrict Defendants from continuing their competitive conduct.  A plaintiff can enforce a restrictive covenant when it is reasonably necessary to protect **legitimate business interests**.  Fla. Stat. § 542.335(1)(b) (emphasis added).  Legitimate business interests include, without limitation, **trade secrets**, **valuable confidential business or professional information** that otherwise does not qualify as

11

trade secrets, *substantial relationships* with specific prospective or existing customers, patients, or clients, and customer, patient, or client goodwill associated with a specific geographic location or a specific marketing or trade area.  *See* Fla. Stat. § 542.335(1)(b) (emphasis added).  Once an employer shows a legitimate business interest for the covenants, "…the burden shifts to the employee to show that the restriction is 'overbroad, overlong, or otherwise not reasonably necessary to protect' the established interests of the employer."  *N. Am. Prod. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002).

As described herein, ISO has numerous legitimate business interests that require the enforcement of its employment covenants.  First, by the very nature of its business, ISO Group must protect the DLMS™, CRM, and RFP databases and other trade secrets and confidential information.  *See* Compl. ¶ 22; *see supra* Part II (A).  These platforms are at the core of ISO Group's business.  As such, ISO Group is required to entrust this heavily protected information in the hands of its employees.

ISO Group also has a legitimate business interest in its substantial relationships with its specific prospective and existing customers, and in its associated goodwill.  Plaintiff has invested significant time, money, and energy into developing relationships and goodwill with its clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers as well as obtaining knowledge concerning each client's tendencies and preferences.  Compl. ¶¶ 14, 18.  ISO Group's databases which catalogue the voluminous materials routinely sought by customers in the defense/aerospace industry and the various sources for supplying those products enable ISO Group to respond to RFP's far more quickly and comprehensively than competitors who do not have access to the databases.

Further, Individual Defendants contractually agreed, among other conditions (1) not to disclose ISO Group's trade secrets and confidential information, (2) not to engage in or become interested, directly or indirectly, in any business that competes with the Plaintiff, and (3) to assign the rights to their intellectual property to Plaintiff. *See* Compl. ¶¶ 44-47, Ex. 9, 10. Based on these, and other, representations memorialized in the Agreements, ISO Group conducted its employment relationship with the Individual Defendants with the understanding that these representations governed those relationships. However, by establishing Aenas and TAT Consulting, in direct competition with ISO Group, the Individual Defendants have blatantly breached their non-competition covenants. Florida law upholds the very type of non-compete provisions contained in the agreements. *See Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So. 2d 268, 273 (Fla. 4th DCA 2006) (upholding temporary injunction enforcing non-competition provision); *Supinski v. Omni Healthcare, P.A.*, 853 So. 2d 526, 530 (Fla. 5th DCA 2003) (finding that courts may grant temporary injunctive relief to enforce valid non-compete provisions).

Moreover, by virtue of their formation of Aenas and TAT Consulting, the Individual Defendants are in a position to use and disclose ISO Group's trade secrets and to breach their covenants of confidentiality and non-solicitation. As a result, Defendants are deriving the benefits of ISO Group's valuable trade secrets, other confidential information, and its valuable client relationships. The specialized and unique knowledge contained in the DLMS$^{TM}$, CRM, and RFP databases constitutes ISO Group's trade secrets and relates to its services and substantial relationships with its clients, clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers, which are expressly recognized as legitimate

business interests pursuant to Fla. Stat. § 542.335(1)(b)(1-5) (2013). *See Am. Residential Servs., Inc. v. Event Tech. Servs., Inc.*, 715 So. 2d 1048, 1049 (Fla. 3d DCA 1998) (noting that confidential business information, even if not trade secrets, constitutes a legitimate business interest pursuant to Fla. Stat. § 542.335(1)(b)(2)); *see also Milner Voice and Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1221 (S.D. Fla. 2005) (two-year non-solicitation restriction in employment agreement found reasonable).[5]

As a result, ISO Group is substantially likely to prevail on its breach of restrictive covenants claims in further support of a preliminary injunction.

### iii.    *Tortious Inference with Business Relationships (Count V)*

As described above, the core of ISO Group's business is its relationship with clients, agents, resellers, sales channels, subcontractors, contractors, or suppliers. Defendants already have engaged known ISO Group clients and suppliers inflicting serious damage on ISO Group. Defendants' conduct, as outlined below, meets all the following elements of a tortious interference claim under Florida Law: (1) existence of a business relationship; (2) defendant's knowledge of the relationship; (3) intentional and unjustified interference with the relationship; and (4) damage to plaintiff as a result of the relationship. *Morgan Stanley Smith Barney, LLC v. Abel*, No. 3:18-CV-00141-J-34MCR, 2018 WL 515348, at *3 (M.D. Fla. Jan. 23, 2018).

First, ISO Group has extensive business relationships as memorialized in its CRM Database. Compl. ¶¶ 15, 16. Individual Defendants, through their employment, were not only

---

[5] Even if a court finds that the non-compete and non-solicitation provisions are overbroad, the court has the power to enforce the agreements with a reduced temporal or geographical scope. *See* Fla. Stat. §542.335(1)(c) (2013).

aware of these relationship, but were compensated by ISO Group to form these relationships for ISO Group's benefit.  Compl. ¶¶ 18, 19, 28.  Through Aenas and TAT Consulting, Individual Defendants are believed to engage at least three current ISO Group's clients, agents, resellers, sales channels, subcontractors, contractors, or suppliers.  Compl. ¶¶ 61-64.  This behavior, upon information and belief, is ongoing.  Compl. ¶ 65.  ISO Group has and, without injunction relief, will continue to sustain damage in diverted business opportunities and lost profits.  Therefore, ISO Group's likelihood of prevailing on this claim further supports granting of the requested preliminary injunction.

*iv.*      *Breach of Fiduciary Duty (Count VI)*

The Individual Defendants, as former officers of ISO Group, owed a fiduciary duty independent of their employment agreements with ISO Group.  *JetSmarter Inc. v. Benson*, 2018 WL 2694598, at *5, *report and recommendation adopted*, 2018 WL 2688771 ("It is well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer.") (quoting *Bank of Am., N.A. v. Crawford*, No. 2:12-cv-691-Ftm-99DNF, 2013 WL 593743, at *3 (M.D. Fla. Feb. 15, 2013)).  A former employer, even absent a restrictive covenant, violates this fiduciary duty when he or she "engage[s] in disloyal acts in anticipation of his future competition, ***such as using confidential information acquired during the course of his employment or soliciting customers*** and other employees ***prior to the end of employment***."  *Id.* (citing *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981)) (additional emphasis added).

ISO Group has clearly alleged that the Individual Defendants breached a fiduciary duty.  Most importantly, Individual Defendants created the competing businesses, Aenas and TAT

15

Consulting well before the three officers left ISO Group.  Compl. ¶¶ 50-56, 58, 61, 63.  Further, Individual Defendants had broad access to ISO Group trade secrets and confidential information during the course of their employment.  Compl. ¶¶ 28, 29.  Upon information and belief, they have continued to use this information (while employed and after leaving ISO Group) to grow their businesses, ISO Group's direct competitors.  Compl. ¶¶ 50-56, 58, 61-65.

As such, ISO Group has a substantial likelihood of success in prevailing on this claim on the merits.  This, coupled with the analysis of the five preceding claims, establishes the first prong of the preliminary injunction standard.

b.      Plaintiff will Suffer Irreparable Harm Without an Injunction

ISO Group will suffer irreparable harm if the restrictive covenants are not enforced, and if the misappropriation and use of its confidential information is not enjoined.  Florida law permits courts to presume irreparable injury in cases involving misappropriation of trade secrets, violation of restrictive covenants, and tortious interference with business relationships.  *See, e.g.*, *Morgan Stanley Smith Barney, LLC v. Abel*, No. 3:18-CV-00141-J-34MCR, 2018 WL 515348, at *4 (M.D. Fla. Jan. 23, 2018); *see also* Fla. Stat. § 542.335(1)(j) ("the violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant.").  However, even without this presumption, a court can find irreparable injury from the solicitation of just one customer.  *Morgan Stanley Smith Barney*, 2018 WL 515348, at *4.  Here, ISO Group has alleged that Defendants have engaged at least three entities considered ISO Group's clients, agents, resellers, sales channels, subcontractors, contractors, or suppliers.  Compl. ¶¶ 61-63.  ISO Group also has reason to

believe that Defendants have targeted and continue to target these entities in numerous ISO Group territories.  Compl. ¶¶ 64-65.

In this situation, no adequate remedy at law exists to compensate for the harm that Defendants continue to cause ISO Group.  *See Morgan Stanley Smith Barney*, 2018 WL 515348, at *4 ("Florida law recognizes that the loss of customers and good will is an irreparable injury and is difficult to measure.") (internal quotation marks and citations omitted); *see also Capraro v. Lanier Bus. Prods., Inc.*, 445 So. 2d 719, 721 (Fla. 4th DCA 1984) (noting that money damages are presumed to be inadequate in context of covenant not-to-compete). Therefore, without an injunction, ISO Group will continue to sustain damage without a way to be adequately compensated.

     c.    <u>The Irreparable Harm to Plaintiff Outweighs any Potential Harm to the Defendants or Other Parties if an Injunction is Granted</u>

The threatened injury to ISO Group vastly outweighs any possible injury an injunction may cause to Defendants.  ISO Group has demonstrated that the Individual Defendants were privy to its trade secrets and Confidential Information, which could be used to Plaintiff's detriment.  *See Autonation, Inc. v. O'Brien*, 347 F.Supp.2d 1299, 1308 (S.D. Fla. 2004). Defendants are likely to cause substantial harm to ISO Group if they are allowed to use its trade secrets and confidential information to compete within the aerospace and defense industry.  *Id.*  Further, ISO Group's trade secrets and confidential information were developed and collected over an extended period of time and at considerable expense to it, and use of such information by a direct competitor would provide an unfair advantage in the Defendants' efforts to compete.  *Id.*  Further, considering that the Individual Defendants consented to the agreements and that such agreements constituted conditions of their compensation and

employment with ISO Group, the relative harm between the parties weighs in favor of issuing

an injunction.  *Id.*  ISO Group, therefore, properly seeks injunctive relief to preserve the status

quo until the merits of the controversy can be fully and fairly adjudicated.  *See Ne. Fla. Chapter*

*of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th

Cir. 1990).

d.    <u>An Injunction Serves the Public Interest</u>

An order enjoining the Defendants from participating, directly or indirectly, in the

violation of the terms of the restrictive covenants contained in the agreements serves the

common good.  The public remains entitled to rely on certainty in contracting, and commercial

development depends, in part, on the ability of a company to protect its legitimate business

interests.  *Beatriz Pino and Viva America Media Grp. v. Spanish Broad. Sys. Of Fla., Inc.*, 564

So. 2d 186, 189 (Fla. 3d DCA 1990); *Silvers v. Dis-Com Sec., Inc.*, 403 So. 2d 1133, 1137

(Fla. 4th DCA 1981) ("[i]f contracts are to have any viability at all, there must be some means

of meaningful enforcement available from the courts . . .[s]ociety needs assurance that written

contracts will not follow in the footsteps of the 'gentlemen's agreement' and become extinct.")

(overruled on other grounds).  Additionally, by enacting section Fla. Stat. § 542.335, the

Florida legislature recognized the public's interest in enforcement of reasonable restrictions on

competition and disclosure of confidential information.  Finally, no countervailing public

policy exists.  Consequently, an injunction would not disserve the public.

5.    **<u>Entry of Bond</u>**

Plaintiff requests that this Court impose a modest bond pursuant to Rule 65(c), Fed. R.

Civ. P.  The entry of a bond here would impose a significant hardship on Plaintiff when it

simply seeks to protect its contractually agreed upon rights and its superior rights in its trade secrets and Confidential Information.  As such, only a minimal bond, if any, should be imposed under these facts.

6.    **Conclusion**

Based on the above, ISO Group respectfully requests that the Court enter an Order enjoining Defendants from (a) using or disclosing any of ISO Group's trade secrets and other information that is not readily known or available to the public regarding its confidential business relationships with current or prospective clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers, employees, pricing, financials, operations, marketing, technology or contracts; (b) independently or cooperatively soliciting, inducing, or encouraging any current employee(s) of ISO Group to terminate their employment with ISO Group or to accept employment with Defendants; (c) contacting, soliciting, or accepting business from any actual or prospective clients of ISO Group; (d) tortiously interfering with ISO Group's contractual and business relations; and (e) violating restrictive covenants with ISO Group.  A copy of a proposed order is attached hereto as **Exhibit A**.

WHEREFORE, Plaintiff respectfully requests that the Court promptly set a hearing on its Motion for Preliminary Injunction and enter an Order enjoining Defendants from (a) using or disclosing any of ISO Group's trade secrets and other information that is not readily known or available to the public regarding its confidential business relationships with current or prospective clients, agents, resellers, sales channels, subcontractors, contractors, and suppliers, employees, pricing, financials, operations, marketing, technology or contracts; (b) independently or cooperatively soliciting, inducing, or encouraging any current employee(s)

of ISO Group to terminate their employment with ISO Group or to accept employment with Defendants; (c) contacting, soliciting, or accepting business from any actual or prospective clients of ISO Group; (d) tortiously interfering with ISO Group's contractual and business relations; and (e) violating restrictive covenants with ISO Group.

## LOCAL RULE 3.01 (g) CERTIFICATION

Pursuant to local Rule 3.01 (g), counsel is not required to confer with Defendants' counsel prior to filing a motion for injunctive relief.

Dated: December 20, 2018

    */s/ Edmund T. Baxa, Jr.*
Edmund T. Baxa, Jr., FL Bar No. 0313378
Primary: ebaxa@foley.com
Secondary: gfinkelstein@foley.com
Virginia R. Beeson, FL Bar No. 1003406
Primary: vbeeson@foley.com
Secondary: bshelley@foley.com

Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, FL 32801-2386
Telephone:  407.423.7656
Facsimile:  407.648.1743

**Attorneys for the Plaintiff, ISO Group, Inc.**